# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE THE APPLICATION OF: ) | |
| ) | |
| DANIEL HERNANDEZ MARTINEZ, ) | |
| ) | |
| Plaintiff/Petitioner, ) | |
| ) | Case No. CIV-16-369-D |
| vs. ) | |
| ) | |
| ELIZABETH MENDOZA FUENTES, ) | |
| ) | |
| Defendant/Respondent. ) | |

## O R D E R

This matter comes before the Court upon the Verified Complaint and Petition for Return of the Children Under the Hague Convention [Doc. No. 1] (the "Petition"). Petitioner Daniel Hernandez Martinez seeks relief pursuant to the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980 (the "Hague Convention"), and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-11. Petitioner claims Respondent Elizabeth Mendoza Fuentes has wrongfully retained the parties' children, D.E.H.M. and D.H.M. (the "Children"), in the United States without his consent or acquiescence, and he seeks the Children's return to their country of habitual residence in Mexico.

On April 28, 2016, the Court held a preliminary injunction and dispositional hearing pursuant to its Order Granting *Ex Parte* Motion Under the Hague Convention for Entry of a Temporary Restraining Order, Scheduling an Expedited Hearing, and Warrant to Take Physical Custody of Children [Doc. No. 13] (hereafter, the "Order"). Petitioner appeared at

the hearing electronically and through counsel; Respondent appeared personally without counsel. The Children were present with representatives of the Oklahoma Department of Human Services ("DHS") as required by the Order, but did not attend the public hearing at the direction of the Court. In attendance at the hearing were DHS assistant general counsel, Bonnie L. Clift, and a caseworker, Lucia Amezquita. Because the primary language of the parties and the Children is Spanish, the hearing was conducted with the services of Spanish-speaking interpreters. Based on the undisputed facts shown by the Petition, testimony of both parties, other evidence received at the hearing, the case record, and information privately disclosed *in camera*, the Court finds that the Petition must be granted and the Children must be returned to Mexico for the reasons stated in open court and more fully set forth in this order.

The Court has subject matter jurisdiction pursuant to ICARA, which implements the Hague Convention in the United States. *See* 22 U.S.C. § 9003(a). The Court has personal jurisdiction over Respondent, who was served with copies of the Petition, the Order, and other pertinent papers by the United States Marshal on April 26, 2016, within this judicial district. Respondent was given timely notice of the hearing by service of the Order, and was expressly "directed to show cause at the hearing . . . why the Children should not be returned forthwith to Mexico, where an appropriate custody determination can be made under Mexican law if necessary." *See* Order, ¶ 4.

The Hague Convention "creates an international legal mechanism requiring contracting states to promptly return children who have been wrongfully removed to, or

wrongfully retained in, their jurisdiction, without deciding anew the issue of custody." *Navani v. Shahani*, 496 F.3d 1121, 1124 (10th Cir. 2007) (citing *de Silva v. Pitts*, 481 F.3d 1279, 1282 (10th Cir. 2007)). The removal or retention of a child is "wrongful" where "it is in breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident immediately before the removal or retention;" and "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." *See* Hague Convention art. 3. Custody rights may arise "by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." *Id*. A court's "inquiry under the Hague Convention is limited to the merits of the abduction claim" and "the merits of the underlying dispute related to custody of [the child]" are not at issue. *Shealy v. Shealy*, 295 F.3d 1117, 1121 (10th Cir. 2002) (internal quotation and citations omitted); *see de Silva*, 481 F.3d at 1282.

Under ICARA, a petitioner "bears the burden of showing by a preponderance of the evidence that the removal or retention was wrongful." *Shealy*, 295 F.3d at 1122; *see de Silva*, 481 F.3d at 1282; 22 U.S.C. § 9003(e)(1)(A). "More specifically, the petitioner must show that: (1) the child was habitually resident in a given state at the time of the removal or retention; (2) the removal or retention was in breach of petitioner's custody rights under the laws of that state; and (3) petitioner was exercising those rights at the time of removal or retention." *Shealy*, 295 F.3d at 1122; *see West v. Dobrev*, 735 F.3d 921, 929 (10th Cir. 2013); *de Silva*, 481 F.3d at 1281. If the petitioner makes this showing of a prima facie case

for return of a child, the burden shifts to the respondent "to establish one of the affirmative defenses or '*narrow* exceptions set forth in the Convention.'" *See West*, 735 F.3d at 930-31 (quoting 22 U.S.C. § 9001(a)(4), formerly 42 U.S.C. § 11601(a)(4); emphasis added by the court); *see also de Silva*, 481 F.3d at 1285 ("defenses set out in the Convention . . . are narrowly construed").

In this case, it is clear that the Children's habitual residence is Mexico. The Children were born and educated in Mexico, and continuously resided there until the family traveled to the United States and sought asylum here in July of 2015. Respondent does not effectively dispute that her refusal to return the Children to Petitioner's custody is a breach of a written custody agreement that the parties executed in Mexico in 2008; the agreement was approved by a local court having jurisdiction over the matter and placed physical custody of the Children with Petitioner.[1] There is no suggestion that Petitioner consented to or acquiesced in Respondent's retention of the Children in the United States; he began efforts to effect their return soon after learning of Respondent's intention to retain the Children here. Thus, there is no substantial dispute that Respondent wrongfully retained the Children in the United States on or about September 25, 2015, after Petitioner was denied asylum and deported to Mexico. The Court therefore finds that Petitioner has established his prima facie case.

---

[1] Respondent testified at the hearing that she did not sign the agreement and her signature on the document is a forgery. This testimony is contrary to the official court documents, which state that her signature was witnessed and the agreement was approved by a judicial officer. Respondent also testified that she has not challenged the agreement in a Mexican court since it was entered in 2008. She presented no reason why the court order should not be given legal effect in the United States. *See Navani*, 496 F.3d at 1132.

4

In light of this showing, Respondent must establish a legally sufficient reason why she should be allowed to retain the Children in the United States. Respondent testified that she fears for the safety of the Children if they are returned to Petitioner because she believes he is in physical danger, having previously survived an attempt by unspecified persons to kill him and having fled from Mexico to seek safety and asylum in the United States. The only defense implicated by this testimony is provided by Article 13(b) of the Hague Convention, which permits a court to refuse to return a child if "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." This defense must be established "by clear and convincing evidence." *See* 22 U.S.C. § 9003(e)(2)(A); *see also West*, 735 F.3d at 931. "'Grave risk' means the potential harm to the child must be severe, and the level of risk and danger very high." *West*, 735 F.3d at 931 (internal quotation omitted).

The Court finds that Respondent lacks clear and convincing evidence of a grave risk of harm *to the Children* if they are returned to Mexico. Respondent's concern involves alleged violence and an alleged threat directed at Petitioner, who denies that he is presently in physical danger. Petitioner testified that he now lives with his parents in a different city from the one where an alleged incident of violence occurred, and there currently is no danger to his family's safety. The information received by the Court *in camera* (discussed *infra*) revealed a single incident of physical violence involving Petitioner several years ago. Petitioner allegedly suffered a gunshot wound that was not life threatening; he took his family to seek help from authorities after the incident occurred. From the record presented,

the Court finds an insufficient basis to conclude that the Children should be retained in the United States because they would be exposed to a grave risk of ham if they are returned to Mexico.

The Hague Convention provides an additional consideration, "left to the discretion of the judicial or administrative authority, which allows for refusal to order the return of a child where 'the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.'" *de Silva*, 481 F.3d at 1285 (quoting Hague Convention, art. 13). During the hearing, the Court inquired of DHS representatives whether they had any information that was appropriate for consideration by the Court. Upon receiving an affirmative response, the Court recessed the hearing to receive the information *in camera*. The caseworker, Ms. Amezquita, stated to the Court in chambers that she had interviewed the Children and had been present for forensic interviews conducted after the Children were placed into temporary emergency custody of DHS. She described statements by the Children in which they expressed feelings that they would be unsafe if returned to Petitioner. She expressed an opinion that D.E.H.M. seemed above average in maturity for her age of 11 years (almost 12 years).[2]

Upon receiving this information, the Court reconvened the hearing and appointed attorney Matthew Kane as guardian ad litem for the Children to represent their interests

---

[2] Ms. Amezquita also stated D.H.M. had disclosed information that suggested the possibility of inappropriate touching of D.H.M. by his father, Petitioner. The Court explored this topic during its *in camera* session with D.H.M. The Court concludes that this information is not sufficiently definite or probative to inform the Court's determination in any meaningful way, and although D.H.M. stated his mother, Respondent, was aware of the incidents, she did not raise them as a matter that would expose D.H.M. to a grave risk of harm if returned to Mexico.

6

before the Court. A second recess was taken to allow Mr. Kane to review a transcript of Ms. Amezquita's *in camera* statements, to meet with the Children separately (assisted by an interpreter), and to make a recommendation to the Court whether the Children objected to being returned to Mexico and whether their age and maturity is such that their views should be considered. After this recess, Mr. Kane advised the Court that the Children objected to being returned to Mexico, and he recommended the concerns of the Children, particularly D.E.H.M., should be heard. The Court then ordered a third recess and held an *in camera* session to speak separately with each child in the presence of Mr. Kane, Ms. Amezquita, a court reporter, and an interpreter.

After interviewing each child in chambers, the Court finds that the older child, D.E.H.M., has attained sufficient age and maturity that her objection to being returned to Petitioner should be considered. On the other hand, the younger child, D.H.M., has not attained sufficient age and maturity for his view to be considered, and his concerns (apart from those voiced by D.E.H.M.) are not sufficiently developed to assist the Court in its determination. D.E.H.M.'s concern is the same as expressed by Respondent, a fear for the Children's safety if returned to Petitioner due to threats of violence against him. Despite her safety concerns, however, D.E.H.M. confirmed that when the family was in Mexico she was able to attend school and church; she stated the family home there was adequate and she and her brother always had enough to eat. She stated that she received medical attention in Mexico when needed and that Petitioner cared for and protected her and her brother.

7

As explained above, the Court finds an insufficient factual basis to conclude by clear and convincing evidence that there is a grave risk of harm to the Children if they are returned to Mexico, and the Court declines to exercise its limited discretion under the Hague Convention and ICARA to refuse to return the Children to their country of habitual residence. The parties should pursue appropriate remedies regarding the Children's custody under Mexican law, if warranted by the circumstances in existence upon their return.

For these reasons, the Court finds that Petitioner is entitled to an order for the immediate return of the Children to Mexico.

IT IS THEREFORE ORDERED that the Petition is GRANTED. The Court directs that D.E.H.M. and D.H.M. be returned to Mexico forthwith and placed in physical custody of Petitioner pending further order, as appropriate, of a Mexican court.

IT IS FURTHER ORDERED that the Oklahoma Department of Human Services shall make appropriate arrangements with consular authorities to return D.E.H.M. and D.H.M. to Petitioner in Mexico and to complete the return within 10 days from the date of this Order. The Oklahoma Department of Human Services shall coordinate with Petitioner's counsel and consular officials to effectuate a smooth transfer of the Children to Mexico at an appropriate border station. The Clerk shall provide a copy of this Order to the Oklahoma Department of Human Services in care of Ms. Bonnie L. Clift, Assistant General Counsel.

IT IS FURTHER ORDERED that Respondent, anyone acting in concert with her, and any other person with actual knowledge of this Order are restrained and enjoined from taking any action which interferes with or impedes the immediate effectuation of the directions of

this Order. The United States Marshal is directed to serve Respondent Elizabeth Mendoza Fuentes with a copy of this Order at the address shown on the prior return of service, or any other place where she may reasonably be found.

    IT IS SO ORDERED this 29th day of April, 2016.

                                            TIMOTHY D. DeGIUSTI
                                            UNITED STATES DISTRICT JUDGE